## GALLAGHER & ASCHER *v.* UNITED STATES (No. 1078).[1]

1. RE-REAPPRAISEMENT.
    Subsection 13 of section 28, tariff act of 1909, contains the word re-reappraisement, appearing there once. The language of the subsection as a whole clearly indicates the word re-reappraisement was used where it occurs in the sense of reappraisement.

2. A WAIVER CONSTRUED.
    The waiver by the importers here set out was intended to apply to and continue throughout all and any proceeding in the reappraisement of the importations. The subsequent conduct of importers confirms this conclusion.

3. WAIVER AND ABSENCE OF SAMPLES.
    In view of the stipulation and waiver, the absence of samples in the proceeding on appeal before the board of three general appraisers did not invalidate this board's finding.

### United States Court of Customs Appeals, May 29, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7411 (T. D. 33030)

[Affirmed.]

*Lester C. Childs* for appellants.

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise is certain meat-slicing machines, entered at the port of Chicago in eight several importations, comprising in all 11 invoices, and was assessed for duty at the rate of 45 per cent ad valorem under paragraph 199 of the tariff act of 1909.

The collector was dissatisfied with the values placed upon the importations by the local appraiser and duly appealed to reappraisement before a single general appraiser. At the time the appeal was taken all the machines, including those examined by the local appraiser, had been delivered to the importers.

Thereafter importers filed with the collector a written instrument, which we will term a waiver, referring to the importations, in the following language:

PORT OF CHICAGO, *April 13, 1911.*

SIR: I hereby request that the importation of meat-slicing machines per steamship *Noordam*, entry No. 3964, 1911, be reappraised at the office of the Board of United States General Appraisers, 641 Washington Street, New York City, and waive my right to have the reappraisement held at the port of entry and hereby stipulate that the result of the reappraisement shall not be contested on account of the absence of the merchandise from the place of reappraisement.

GALLAGHER & ASCHER.

---

[1] Reported in T. D. 33518 (24 Treas. Dec., 961).

Thereupon the collector duly transmitted the invoices and all the papers appertaining to the matter to New York, where the reappraisement of the merchandise was made by a single general appraiser, who did not advance the values over those declared at entry. The collector deeming such reappraisement too low again appealed to a board of three general appraisers, which duly proceeded to hear the case and appraise the merchandise. The values fixed by this board exceeded the values declared at entry and thereupon appropriate additional duties were assessed upon the merchandise pursuant to subsection 7 of section 28 of the tariff act of 1909. The importers protested this assessment, claiming that these last proceedings were illegal and void, upon the alleged ground that the board of three had failed to examine one package from each invoice of the merchandise and had failed to examine at least one in every 10 packages of the importations. A classification board of general appraisers duly heard the protest upon evidence and overruled the same, whereupon the importers appealed to this court.

There was no sample of the importations before the single general appraiser nor before the reappraisement board of three. The importers do not challenge the action of the single general appraiser, for they concede the reappraisement made by him to be within the terms of their waiver, but maintain that they did not intend thereby to waive their rights in any particular before the board of three general appraisers, and that the waiver itself must be so construed. They therefore challenge the jurisdiction of the board of three general appraisers, because that board did not have before it and did not examine any sample or samples taken from the importations nor any lawful substitute therefor.

The first question is as to the meaning of the waiver. In substance it embodies a request for reappraisement at the office of the Board of General Appraisers in New York City, the waiver of importers' right to have such reappraisement made at Chicago, the port of entry, and a stipulation or agreement that the result of the reappraisement would not be contested by them on account of the absence of the statutory samples of the importations from the place of reappraisement.

So far as the language of the document is concerned it relates as well to proceedings before a board of three general appraisers as to proceedings before one such officer.

The reason why the importers signed and filed this waiver may be in fairness stated in the language of Mr. Gallagher, one of the appellants, while testifying on that subject before the classification board. He said:

I had filed that in order to have the cases heard at New York promptly; yes, sir. The reason for that was that there is a wide gap; there was two months intervened between the visit of the general appraisers here, and we were anxious to have the matter decided, so we had it transferred to New York.

. It also appears from the testimony, and is not in dispute, that at the hearing before the single general appraiser an accurate description of the merchandise was testified to and taken down by a stenographer; that the machines in question were obtained in two sizes; that each was the same as every other of the same size, and that at the time the proceedings were held before the single general appraiser and the reappraisement board of three, identical machines, though not from the importations, were in the custody of the Government at New York, where such proceedings were had and where the waiver requested they should be had.

It also appeared by the same witness that he was present at the taking of some evidence in Chicago to be used in the proceedings before the reappraisement board and made no objection to proceeding therewith on the ground of the absence of the merchandise. It is now claimed he did not then know it was absent. It would, however, seem fair to assume that he was charged with the knowledge thereof, because he knew or should have known that it all had been delivered to the importers, as already herein stated, which delivery was testified to before the classification board by the same witness. As further throwing some light upon appellants' attitude toward this waiver, it may be noted that at the hearing before the classification board, counsel for importers said, referring thereto:

We are not protesting against a reappraisement at all; it is a re-reappraisement that we are protesting against and that is a collector's appeal. We would recognize that. if we had appealed from the decision of the single general appraiser, we naturally could not deny the board's jurisdiction. Any waiver that we made in the original reappraisement has no bearing upon the re-reappraisement upon a collector's appeal before another tribunal.

From what already appears it seems fair to say that the circumstances at the time the waiver was made and filed, and which may be taken into consideration in determining what was intended thereby, were substantially as follows: The imported merchandise had been entered and appraised and all of it delivered to the importers. Thereafter the collector duly appealed to a single general appraiser for reappraisal thereof. The importers were anxious to have the question speedily decided, and so asked that the single general appraiser immediately proceed with such reappraisal at the office of the general appraisers in New York, agreeing that the result of the reappraisement should not be contested by them on account of the absence of the merchandise, knowing that in the custody of the Government and available for inspection and examination, if required, were machines identical in all respects with the importations. Importers also knew that either themselves or the collector might desire to appeal from the appraisal of the single general appraiser to the board of three, in which case all the papers relating to the matter would be transferred to said board, which would be required under

the law, unless the same were waived, to have before it samples of the merchandise. It does not appear that there was any anxiety on the part of the collector for a speedy determination of the value of these machines, but rather that the importers desired it and took the necessary steps to procure that result, to accomplish which, among other things, they evidently thought it advisable to waive the presence of samples of the importations, which must have meant the examination thereof. If a speedy disposition of the case was the thing desired and that was to be aided by waiving the presence of the statutory samples of the importations, it is apparent that this would best be effected by giving to the waiver the construction that would make it also applicable to proceedings before a board of three general appraisers if appeal were taken to it.

We think in view of all the circumstances it was not, at the time the waiver was filed, understood or intended that the absence of identical samples of the merchandise should be limited to the proceedings before the single general appraiser, but that it was intended it should apply to all the proceedings instituted by either the collector or the importers, the object of which was to ascertain the value of the machines. Indeed, the statement of counsel made before the classification board, which we have before quoted, seems to indicate, if the importers instead of the collector had appealed to the board of three, that such was his construction of the waiver.

In addition to the circumstances surrounding the transaction, the following may be adduced as reasons why the interpretation should be given to the waiver that we have indicated.

Subsection 13 of section 28 of the tariff law of 1909 provides that the collector may, if he deems an appraisement too low, "appeal to reappraisement, which shall be made by one of the general appraisers"; that if the importer or other proper like party shall be dissatisfied with said appraisement "he may within ten days thereafter give notice to the collector, in writing, of such dissatisfaction"; that the resulting reappraisement shall be final unless the importer or other proper like party if dissatisfied therewith "within five days thereafter, give notice to the collector, in writing, of such dissatisfaction," or unless the collector deeming the reappraisement too low "shall within ten days thereafter appeal to re-reappraisement"; and that in all such cases the papers appertaining thereto shall be transmitted to the board of nine general appraisers to be by rule thereof assigned for determination.

We pause to note that the word "re-reappraisement" is used only once in said subsection.

It is finally provided therein that the decision of "the single general appraiser in case of no appeal, or of the board of three general appraisers, in all reappraisement cases, shall be final and conclusive against all parties."

We think the language of this subsection clearly indicates as a whole that the word "re-reappraisement" was used in the sense of the word "reappraisement." The prefix "re" is of Latin origin and means "back," "again," "anew," etc. (see Century and Standard dictionaries). Its use finds exemplification in such words as "reassign," "replead," "reassignment," "repleader," and a large number of other words. The dictionaries do not seem to recognize such a use of the prefix as would be involved in its repetition, as "re-repleader," "re-reassignment," or in the word here, "re-reappraisement." Indeed, such use would seem, if once admitted, to be capable of further extension, as in a "re-re-repleader," etc., which we think does not exist. When something is done it may be done over, which is a "re-doing," and as many times as the act is performed it is each time a "re-doing" and not, so to speak, a "re-re-doing" thereof.

The word "re-reappraisement" seems not yet to have found a permanent place in the English language.

We have, perhaps unnecessarily, given place to this phase of the discussion, because the appellants' contention here that the word "reappraisement," as used in the waiver, can not apply to a "re-reappraisement" proceeding, manifestly rests in the main upon the proposition that the single use of that word in the statute referred to indicates a proceeding other and different than a reappraisement. We think it does not have that effect. The so-called re-reappraisement is but a reappraisement and therefore the word "reappraisement," as used in the waiver, related to all subsequent proceedings that might be instituted either by the collector or by the importers, whether before one general appraiser or before the board of three, for the purpose of fixing the value of the importations.

The Government contends that because the importers did not object to the reappraisement board proceeding with the case on the ground that no samples were before it, it should be held, in view of the circumstances, to imply their consent that samples of the same type of machines, though not of the importations, in the custody of the Government, should be examined by the board. This contention is not without some merit, especially when we consider that at the hearing before the single general appraiser a careful description of the machines was put into the record. Manifestly this would aid him in inspecting the representative machines in the custody of the Government which Mr. Gallagher testified he thought the general appraiser at the hearing before him said he would do, as it would insure an examination of the proper samples. It might also serve a like office before the board to which the record of the proceedings before the single general appraiser would be transmitted. And in this connection the Government points to the fact that the record does not show that the board did not examine such other

machines. While under some circumstances this might be of importance we do not find it necessary to rest the decision upon that ground.

To recapitulate: We hold the waiver was intended to apply to and continue throughout all and any proceeding in the reappraisement of the importations, and reach that conclusion upon a consideration of the language thereof and the circumstances in which it was made. To this may be added that subsequent conduct of the importers confirms the conclusion.

The importers concede, as well they must, that the absence of samples of the importations at the hearing before the single general appraiser did not deprive him of jurisdiction, in view of their stipulation and waiver, and it follows that, as we hold it was equally of force in the proceeding before the board of three general appraisers, it is likewise effective there.

The importers here make no complaint that is not founded on the absence of the samples of the importations before the board of three.

The result is that the judgment of the Board of General Appraisers is *affirmed*.

MARTIN, Judge, dissents.